IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| JOHN MAGLADERY, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00176 (AJT/IDD) |
| | ) | |
| ROBERT P. BERNARDI, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## ORDER

Before the Court are Motions to Dismiss in this action filed on behalf of Defendants

Nihat Cardak ("Cardak"), [Doc. No. 19], Daniel Bernardi ("D. Bernardi"), [Doc. No. 87],

Stephens, Inc. ("Stephens"), [Doc. No. 81], Thompson, Hughes, & Trollinger, P.L.L.C.

("Thompson"), [Doc. No. 46], and Robert Hisaoka ("Hisaoka"), [Doc. No. 35], (collectively the

"Motions"). The Court held a hearing the Motions on November 4, 2021, following which it

took them under advisement. [Doc. No. 162].

For the following reasons, the Motions are GRANTED; and this case is DISMISSED.

## I. BACKGROUND

Plaintiffs John Magladery, Eugene Johnson, Joanne Valdes, and John O'Neill Jr.

(collectively the "Plaintiffs") filed this action on February 19, 2020. [Doc. No. 1] ("Compl." or

"Complaint") at 1. At its core, this dispute concerns Plaintiffs' investment in GigaMedia Access

Corporation ("Giga") and GigaMedia Holdings Corporation ("Giga Holdings"), which Plaintiffs

allege created a Ponzi scheme to fraudulently induce Plaintiffs to invest in or loan money to

Giga. *Id.* at ¶1. In that regard, Plaintiffs essentially allege that Defendants R. Bernardi and

Cardak, who were principals of Giga and Giga Holdings, created preferred stock offerings to

entice Plaintiffs and other investors to purchase preferred stock and then, without Plaintiffs'
required knowledge or approval, sold or transferred existing preferred stock and created
additional stock offerings to obtain new investors to pay off old investors. *Id.* at ¶¶ 20, 22, 32-
33; *see also* Comp. Exhibits 1, 4, 6 (collectively "Series D Documents"); Exhibits 7, 10, 11, 12,
13 (collectively "Series E Documents"). Central to these claims is the 2007 Amended and
Restated Stockholders' Agreement ("2007 Amended Agreement"), which Plaintiffs allege laid
out the steps necessary for an owner of Series E preferred stock to sell or transfer their shares.
*See* Exhibit 8. To do so under the terms of the 2007 Amended Agreement, the owner needed to
give notice to the remaining founders and investors who would then have the right of first refusal
to purchase the shares under the same terms or elect to co-sell their same class of stock at the
same time. *Id.* at ¶¶ 26-30. Should an owner sell or transfer stock in contravention of the 2007
Amended Agreement, the remaining investors would be entitled to exercise a "put option" on the
breaching owner, among other remedies such as recouping legal fees. *Id.* at ¶ 31. Plaintiffs
allege that Defendants Cardak, D. Bernardi, and Hisaoka transferred stock in violation of the
2007 Amended Agreement. They also allege that these Defendants, together with Defendants
Stephens and Thompson, engaged in various fraudulent acts that induced their investments or
caused their financial losses.

On June 16, 2020, this Court transferred this matter to the United States Bankruptcy
Court for the District of Delaware ("Bankruptcy Court"). [Doc. No. 140]. On October 6, 2020,
the Bankruptcy Court withdrew Counts 3, 4, 5, and 6 from this action and transferred back to this
Court the remaining counts, Counts 1, 2, 7, and 8 -17. [Doc. Nos. 141-142].

On November 4, 2021, this Court held a hearing, following it took the Motions under
advisement.

## II. LEGAL PRINCIPLES

### A. Failure to State a Claim Rule 12(b)(6)

A motion to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) should be granted unless the complaint "state[s] a claim to relief that is plausible on its face." *United States v. Triple Canopy*, 775 F.3d 628, 634 (4th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 563 (2007) ("A plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. This requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully.") (citation omitted).

The general pleading standard requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . [and that] give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Anderson v. Sara Lee Corp.*, 508 F.3d 181, 188 (4th Cir. 2007) (internal quotations omitted); *see also* Fed. R. Civ. P. 8(a)(2). *Twombly* established that the "plain statement" must "possess enough heft"—that is, "factual matter"—to set forth grounds for the plaintiff's entitlement to relief "that is plausible on its face." 550 U.S. at 557, 570. In other words, the facial plausibility standard requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Robertson v. Sea Pines Real Estate Co.*, 679 F.3d 278, 287 (4th Cir. 2012) (internal quotations omitted). "A pleading that offers labels and conclusions[,] a formulaic recitation of the elements of a cause of action . . . [or] naked assertions devoid of further factual enhancement" will not suffice. *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Walker v. Prince George's*

3

*Cty., Md.*, 575 F.3d 426, 431 (4th Cir. 2009) (citations omitted). Accordingly, in order to survive a Rule 12(b)(6) motion to dismiss, the complaint must present sufficient non-conclusory factual allegations to support reasonable inferences of the plaintiff's entitlement to relief and the defendant's liability for the unlawful act or omission alleged. *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (citations omitted).

### B. Fraud Rule 9(b)

Claims that sound in fraud are subject to the heightened pleading requirement set forth in Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To survive a 12(b)(6) motion, Plaintiffs' fraud claim must therefore plead with particularity "(1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Fessler v. Int'l Bus. Machines Corp.,* 959 F.3d 146, 153 (4th Cir. 2020). If a plaintiff is alleging constructive fraud, the same standard applies "except instead of pleading that the false representation was made intentionally and knowingly, the plaintiff is only required to plead that the false representation was made innocently or negligently." *Id.* (internal citation omitted).

### C. Lack of Personal Jurisdiction 12(b)(2)

A motion to dismiss for lack of subject matter jurisdiction under 12(b)(1) can be based either on the allegations of the complaint or an evidentiary showing. *Kuntze v. Josh Enterprises, Inc.*, 365 F. Supp. 3d 630, 636 (E.D. Va. 2019). The former is a facial challenge while the latter is a factual challenge. In a facial challenge, the court must accept as true all of the complaint's factual allegations and the plaintiff is essentially afforded the same procedural protections as she would receive under Fed. R. Civ. P. 12(b)(6). In a factual challenge, by contrast, the movant

4

challenges the factual basis for subject matter jurisdiction and the burden shifts to the plaintiff to prove subject matter jurisdiction. *Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Carter v. United States*, No. 3:19CV164, 2020 WL 3883253, at \*5 (E.D. Va. July 9, 2020). In deciding a factual challenge, the court must construe the pleadings "as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Id.*

## III. ANALYSIS

The following claims are currently pending in this action:[1]

1. against **Cardak** for fraud (Counts 1 and 15), *id.* at ¶¶ 72-82, constructive fraud (Count 2), *id.* at ¶¶ 83-93, voidable voluntary transfer under Va. Code §55.1-401 (Count 6), *id.* at ¶¶ 109-113, pretrial levy or seizure of attachment under Va. Code § 8.01-534 (Count 8), *id.* at ¶¶ 119-123, and breach of contract (Count 16), *id.* at ¶¶ 193-197;

2. against **D. Bernardi** for fraud (Counts 9 and 15), *id.* at ¶¶ 124-131, 184-192; constructive fraud (Count 10), *id.* at ¶¶ 132-139; and breach of contract (Count 16), *id.* at ¶¶ 193-197;

3. against **Stephens** for fraud (Counts 11 and 15), ¶¶ 140-151, 184-192, constructive fraud, (Count 12), *id.* at ¶¶ 152-162, and negligence (Count 17), *id.* at ¶¶ 198-207;

4. against **Thompson** for fraud (Count 13), *id.* at ¶¶ 163-173, constructive fraud (Count 14), *id.* at ¶¶ 174-183, and negligence (Count 17), *id.* at ¶¶ 198-207;

---

[1] Counts 1, 2, 3, 5, 7, 15 and 16 were also originally asserted against Defendant R. Bernardi, who was found in default at the November 4, 2021 hearing. [Doc. No. 162]. Counts 13 and 14 were originally asserted also against Defendants Baker Tilly Virchow Kraus, LLP ("Baker Tilly") and BDO USA LLC ("BDO"), both of which have been voluntarily dismissed. *See* [Doc. Nos. 59, 69]. Count 15 was also originally asserted against Defendants Wincup and Bank of America, both of which have been voluntarily dismissed. *See* [Doc. Nos. 73, 134]. Count 17 was originally also asserted against Defendant BDO, [Doc. No. 59], Defendant Wincup, [Doc. No. 134], and Defendant BofA, [Doc. No. 75], all of which were voluntarily dismissed from the case. *See* [Doc. Nos. 59, 73, 134].

5. against **Hisoaka** for fraud (Count 15), *id.* at ¶¶ 184-192, and breach of contract (Count 16), *id.* at ¶¶ 193-197.

### A. Cardak's Motion to Dismiss

#### 1. Fraud (Counts 1, 15) & Constructive Fraud (Count 2)

Plaintiffs allege in Count 1 that Cardak and R. Bernardi provided false information concerning the financial viability of Giga and the amount of preferred stock issued.  Compl. ¶¶ 73.  More specifically, they allege that Cardak and R. Bernardi provided to Plaintiffs certain financial documents created by others, including Defendants Thompson and Stephens, in order to mislead them into investing or loaning money to Giga and which were successful in doing so. *See* Compl. ¶¶ 22-35, 36-41, 48, 50, 52, 55.

Plaintiffs fail to allege with particularity the elements of their fraud claims against Cardak as required under Rule 9(b)'s heightened pleading standard, including exactly when and in what amounts their stock purchases were made and who received and relied on what information and when with respect to each purchase.  *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) (Plaintiffs must provide "the who, what, when, where, and how of the alleged fraud.").  For example, the Plaintiffs allege that they purchased their preferred stock in Giga beginning in 2005 and 2006 and that as an inducement to purchase those shares R. Bernardi and Cardak provided them with false financial and accounting information from various co-defendants. *See* Compl. ¶¶ 36-39, 38-51.  But the financial statements referenced and attached as exhibits are dated no earlier than July 10, 2015, post-dating much of their investment in Giga. *See* Compl. ¶¶ 36-39, 48.  The Complaint therefore fails to state a claim for actual or constructive fraud claim and Cardak's motion to dismiss Counts 1, 2 and 15 is **GRANTED**.

*2. Voidable Voluntary Transfer Va. Code § 55.1-401, et seq. (Count 6)*

With respect to Count 6,[2] Plaintiffs allege that Giga transferred at least $200,000 to Cardak without consideration while Giga was insolvent or which caused Giga to become insolvent.  Compl. ¶¶ 109-113.  However, as with their other fraud claims, Plaintiffs have failed to allege with specificity the facts supporting this claim.  The only specifics Plaintiffs provide is the dollar amount, without any time references or other factual information, and for these reasons, Cardak's motion to dismiss this claim is **GRANTED**.

*3. Breach of Contract (Count 16)*

Plaintiffs allege that Cardak was subject to the 2007 Amended Agreements pertaining to the Series D and E preferred shares, which he violated by making unauthorized preferred stock transactions.  Compl. at ¶¶ 193-97.[3]  Plaintiffs do not provide any additional information as to the number of shares that were transferred or the price for the shares.  *Id.* at ¶¶ 65-67.  And the exhibit Plaintiffs cite to as evidence of the transfer, Exhibit 32, does not implicate Cardak.  Furthermore, even though Cardak was CFO of Giga at the time the Series E preferred stock agreement and the 2007 Amended Agreement were entered into, Cardak did not sign either agreement.  *See* Exhibit 9; Exhibit 10.  Because Plaintiffs do not allege facts that make plausible that Cardak personally was subject to the relied upon contractual obligations, his motion to dismiss Count 16 is **GRANTED**.

---

[2] Va. Code Ann. § 55.1-401 provides:

> Every gift, conveyance, assignment, transfer, or charge that is not upon consideration deemed valuable in law, or that is upon consideration of marriage by an insolvent transferor or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts were contracted at the time such gift, conveyance, assignment, transfer, or charge was made but shall not, on that account merely, be void as to creditors whose debts have been contracted, or as to purchasers who have purchased, after such gift, conveyance, assignment, transfer, or charge was made. Even though it is decreed to be void as to a prior creditor, because voluntary or upon consideration of marriage, it shall not, for that cause, be decreed to be void as to subsequent creditors or purchasers.

[3] Plaintiffs do not address in their briefing Cardak's motion to dismiss the breach of contract claim. *Compare* [Doc. No. 20] *with* [Doc. No. 52].

7

### 4. *Pretrial Levy or Seizure of Attachment (Count 8)*

Plaintiffs have also failed to allege facts that make plausible their claim for a pretrial levy

under Va. Code § 8.01-537, which provides for a plaintiff to

> recover a debt or damages for a breach of contract, express or implied, or damages for a wrong, the petition shall set forth (i) the plaintiff's claim with such certainty as will give the adverse party reasonable notice of the true nature of the claim and the particulars thereof, (ii) a sum certain which, at the least, the plaintiff is entitled to, or ought to recover, and (iii) if based on a contract and if the claim is for a debt not then due and payable, at what time or times the same will become due and payable.

The statute also requires, among other things, that a Plaintiff state one of the grounds mentioned

in Va. Code § 8.01-534,[4] and set forth specific facts in support of the allegation.

---

[4] Va. Code § 8.01-534 lays out the following:
   A. It shall be sufficient ground for an action for pretrial levy or seizure or an attachment that the principal defendant or one of the principal defendants:
      1. Is a foreign corporation, or is not a resident of this Commonwealth, and has estate or has debts owing to such defendant within the county or city in which the attachment is, or that such defendant being a nonresident of this Commonwealth, is entitled to the benefit of any lien, legal or equitable, on property, real or personal, within the county or city in which the attachment is. The word "estate," as herein used, includes all rights or interests of a pecuniary nature which can be protected, enforced, or proceeded against in courts of law or equity;
      2. Is removing or is about to remove himself out of this Commonwealth with intent to change his domicile;
      3. Intends to remove, or is removing, or has removed the specific property sued for, or his own estate, or the proceeds of the sale of his property, or a material part of such estate or proceeds, out of this Commonwealth so that there will probably not be therein effects of such debtor sufficient to satisfy the claim when judgment is obtained therefor should only the ordinary process of law be used to obtain the judgment;
      4. Is converting, is about to convert or has converted his property of whatever kind, or some part thereof, into money, securities or evidences of debt with intent to hinder, delay, or defraud his creditors;
      5. Has assigned or disposed of or is about to assign or dispose of his estate, or some part thereof, with intent to hinder, delay or defraud his creditors;
      6. Has absconded or is about to abscond or has concealed or is about to conceal himself or his property to the injury of his creditors, or is a fugitive from justice.
   The intent mentioned in subdivisions 4 and 5 above may be stated either in the alternative or conjunctive.
   B. It shall be sufficient ground for an action for pretrial levy or seizure or an attachment if the specific personal property sought to be levied or seized:
      1. Will be sold, removed, secreted or otherwise disposed of by the defendant, in violation of an obligation to the plaintiff, so as not to be forthcoming to answer the final judgment of the court respecting the same; or
      2. Will be destroyed, or materially damaged or injured if permitted to remain in the possession of the principal defendant or one of the principal defendants or other person or persons claiming under them.

Plaintiffs have not alleged with specificity that one of the grounds mentioned in Va. Code § 801.534 applies to Cardak.  Plaintiffs' entire claim for a pretrial levy states that after Giga filed for bankruptcy, Cardak "disappeared and was believed to be in Turkey" and upon their "knowledge and belief," "Cardak intends to transfer his assets out of the commonwealth of Virginia."  Compl. at ¶¶ 119-123.  These conclusory allegations are insufficient to obtain a prejudgment attachment. *See Jones v. A Town Smoke House & Catering Inc.*, 106 Va. Cir. 168 (2020).  Moreover, Plaintiffs appear to concede that they have not complied with Va. Code § 8.01-537 at this stage in the proceeding. [Doc. No. 52] at 5-6.[5]  Cardak's Motion to Dismiss Count 8 is therefore **GRANTED**.

### B. Claims against D. Bernardi.

#### 1. Fraud (Count 9) & Constructive Fraud (Count 10)

Plaintiffs broadly allege that D. Bernardi was paid for consulting services he never provided and therefore took away "much needed assets from Giga" and also misled Plaintiffs into investing or loaning Giga money.  Compl. ¶¶ 124-13 (fraud claim); *see also* Compl. ¶¶ 132-139 (constructive fraud claim); Compl. Exhibits 34 (a summary of D. Bernardi's work experience), 35-36 (consulting agreement between Giga and D. Bernardi).  Plaintiffs do not assert that D. Bernardi ever made representations to them nor do they provide any specifics on their claim that somehow D. Bernardi provided these consulting services with the knowing intent to defraud investors.  Plaintiffs also fail to explain how and why D. Bernardi's consulting services would have induced them to invest or loan money to Giga.  Plaintiffs' claims, in essence, reduce to arguing that Giga did not responsibly spend the money that they invested in it,

---

C. In an action for rent, it also shall be a sufficient ground if there is an immediate danger that the property subject to the landlord's lien for rent will be destroyed or concealed.

[5] Plaintiff state "[u]pon [their] obtaining the necessary information required to swear out a petition, they will ensure they follow all required procedures."  [Doc. No. 52] at 6.

without alleging, as required under Rule 9(b), the facts that make plausible their claim that D. Bernardi engaged in actual or constructive fraud. For these reasons, D. Bernardi's motion with respect to Counts 9 and 10 is **GRANTED**.

### 2. Fraud (Count 15)

Plaintiffs also allege that D. Bernardi engaged in fraudulent conduct when he transferred or sold preferred stock in a manner prohibited by the 2007 Amended Agreement and documents related to Series D & E agreements. Compl. ¶¶ 184-192. As an initial matter, Plaintiffs have not explicitly alleged that D. Bernardi actually signed the signed the 2007 Amended Agreement and the 2007 Amended Agreement attached to the Complaint as an Exhibit is not signed by him. And in any event, Plaintiff have failed to allege with the required particularity the elements of their fraud claim against D. Bernardi; and any fraud claim based on the breach of the 2007 Amended Agreement would be barred by the economic loss rule.[6] *See Scott v. GMAC Mortg., LLC*, No. 3:10CV00024, 2010 WL 3340518, at *6 (W.D. Va. Aug. 25, 2010) ("The law of torts is well equipped to offer redress for losses suffered by some reason of a breach of some duty imposed by law to protect the broad interests of social policy. Tort law is not designed, however, to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement.") (internal citation and quotations omitted). For the above reasons, D. Bernardi's Motion with respect to Count 15 is **GRANTED**.

### 3. Breach of Contract (Count 16)

Plaintiffs allege that D. Bernardi, along with co-defendants, sold preferred Giga stock in violation of the 2007 Amended Agreement and other preferred stock agreements. Compl. ¶¶ 26-

---

[6] Plaintiffs claim that because they alleged "actual fraud" as opposed to "constructive fraud," the economic loss rule does not apply, but an actual fraud claim is clearly within the scope of the economic loss rule. *See Rattner v. Chubb Nat'l Ins. Co.*, No. 117CV00136LMBMSN, 2017 WL 11500148, at *1 (E.D. Va. Sept. 28, 2017) ("The Virginia Supreme Court has broadly applied the "source of duty" rule to limit fraud actions evolving from a contractual relationship only to claims of fraud in the inducement or actions under the Virginia Consumer Protection Act when consumer transactions are involved.").

35, 193-95; *see also* Complaint Exhibit 9.  But Plaintiffs fail to provide basic details about these transactions, such as when D. Bernardi sold preferred stock, how much stock he had, or for what price it sold for, and to whom he sold it.  More basic, as stated above, is that D. Bernardi does not appear to have signed the 2007 Amended Agreement or the Series E preferred stock agreement.  *See* Exhibit 9 at 19; Exhibit 10 at 113; *see also Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165 (4th Cir. 2016) ("[r]ecognizing the general rule that the exhibit prevails in the event of a conflict between an attached exhibit and the allegations of a complaint").  For these reasons, D. Bernardi's Motion to Dismiss with respect to Count 16 is **GRANTED**.

### C. Claims against Stephens.

Stephens has moved to dismiss based on lack of personal jurisdiction.  Because this Court lacks both general and specific jurisdiction over Stephens, this action is dismissed against Stephens pursuant to Fed. R. Civ. P. 12(b)(1).

A court may exercise personal jurisdiction over a nonresident defendant so long as the defendant has "certain minimum contacts" with the forum and "the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  A plaintiff carries the burden of establishing the basis and grounds for personal jurisdiction by a preponderance of the evidence.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).  The Supreme Court has set out two types of personal jurisdiction, general and specific, neither of which is present here.

#### 1. General Personal Jurisdiction

General jurisdiction exists where a corporation's "in-state activity is [so] 'continuous and systematic'" that the corporation is "essentially at home in the forum State.  *Goodyear Dunlop*

*Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).  Practically speaking, a corporation

is at home either where it is incorporated or where it has its principal place of business.  *Id.* at

924; *see also Fidrycalsoh v. Marriott Int'l, Inc.*, 952 F.3d 124, 132 (4th Cir. 2020).  Here,

Stephens' principle place of business and place of incorporation are in Arkansas, [Doc. No. 82]

at 7.  It is therefore "at home" in Arkansas, not Virginia, and so this Court lacks general

jurisdiction.

    *2. Specific Personal Jurisdiction*

    Specific jurisdiction allows a state to exercise jurisdiction over a defendant with respect

to a specific cause of action where the defendant's acts giving rise to that cause of action were

either committed in or directed to the forum state.  *Burger King Corp. v. Rudzewicz*, 471 U.S.

462, 472–73 (1985).  And "the defendant must have purposefully directed his activities at

residents of the forum.  *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 140 (4th Cir. 2020) (quoting

*Burger King Corp.*, 471 U.S. at 472).  This "purposeful availment" requirement provides out-of-

state defendants "fair warning" that their activity may subject them to suit.  *Id.*[7]  Importantly,

"the plaintiff cannot be the only link between the defendant and the forum.  Rather, it is the

defendant's conduct that must form the necessary connection with the forum State that is the

basis for its jurisdiction over him." *Walden v. Fiore*, 571 U.S. 277, 285 (2014).  A court may

therefore exercise specific personal jurisdiction where (1) "the defendants 'purposefully availed

[themselves] of the privilege of conducting activities' in Virginia; (2) [] 'the plaintiff's claim

[arose] out of those activities directed at'" Virginia; and (3) [] 'the exercise of personal

---

[7] For example, a publisher who distributes magazines into a particular state would be on notice
that it may be subject to that state's jurisdiction, *Fidrych*, 952 F.3d at 140.*id.*; so too with a
corporation which delivers its products into the stream of commerce of a particular state with the
expectation that consumers in that state purchase the products.  *Id.*

jurisdiction would be constitutionally reasonable.'" *Alexander v. Ave.*, 473 F. Supp. 3d 551, 557

(E.D. Va. 2020) (citing *Perdue Foods LLC v. BRF S.A.*, 814 F.3d 185, 189 (4th Cir. 2016)).

     The determination of whether the Court can assert personal jurisdiction over a

nonresident defendant involves two steps: (1) whether the state's long arm statute authorizes the

exercise of jurisdiction; and (2) if so, whether the exercise of jurisdiction comports with the due

process requirements under the Fourteenth Amendment. *Carroll v. Vinnell Arabia, LLC*, No.

1:15CV815 JCC/JFA, 2015 WL 5579917, at *3 (E.D. Va. Sept. 22, 2015).  Virginia's long arm

statute allows jurisdiction over nonresident defendants who "engage in some purposeful activity

[] to the extent permissible under the due process clause." *Id.*  Because of this, "the statutory

inquiry merges with the constitutional inquiry." *Consulting Engineers Corp. v. Geometric Ltd.*,

561 F.3d 273, 277 (4th Cir. 2009).  The Fourth Circuit has pointed to the following factors to

determine whether a defendant has purposely availed itself of the privilege of conducting

business in a foreign jurisdiction:

> (1) whether the defendant maintained offices or agents in the State; (2) whether
> the defendant maintained property in the State; (3) whether the defendant reached
> into the State to solicit or initiate business; (4) whether the defendant deliberately
> engaged in significant or long-term business activities in the State; (5) whether a
> choice of law clause selects the law of the State; (6) whether the defendant made
> in-person contact with a resident of the State regarding the business relationship;
> (7) whether the relevant contracts required performance of duties in the State; and
> (8) the nature, quality, and extent of the parties' communications about the
> business being transacted.

*Sneha Media & Ent., LLC v. Associated Broad. Co. P Ltd.*, 911 F.3d 192, 198–99 (4th Cir.

2018).  At this stage in the litigation, the plaintiff has the burden of establishing a prima facie

showing of jurisdiction by a preponderance of the evidence.  *New Wellington Fin. Corp. v.*

*Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005) (explaining the plaintiff has the

burden to prove personal jurisdiction by a preponderance of the evidence but that such a showing

may be merely prima facie if the court is making its determination on the papers; further noting the court "must construe all inferences in the in favor of jurisdiction and view the pleadings in the light most favorable to the plaintiff").

Plaintiffs have not alleged or presented evidence sufficient to establish that Stephens has sufficient minimum contacts to this jurisdiction. Plaintiffs argue that Stephens' conduct falls under the Virginia long-arm statute, Va. Code 8.01-328.1, because Giga was headquartered in Virginia, Giga and Stephens signed a contract through which Stephens "derived substantial revenue," the information Stephens used was generated in Virginia, and Stephens is authorized to do business in Virginia. [Doc. No. 94] at 3-4; [Doc. No. 94-1] at 1-2 (Giga registered to do business in Virginia). It is debatable whether that contract alone would be enough to create a constitutional jurisdictional connection, even as to claims by Giga. *See New Venture Holdings, L.L.C. v. DeVito Verdi, Inc.*, 376 F. Supp. 3d 683, 692 (E.D. Va. 2019) ("[T]he Supreme Court has cast doubt on whether a contract alone can ever be a sufficient basis for jurisdiction."). But more dispositive is that there are no further allegations of any contractual relationship or communications between Stephens and any of these plaintiffs or that Stephens engaged in any other activity within Virginia from which personal jurisdiction as to the Plaintiffs' claims could be established. *See Sneha Media & Ent.,* 911 F.3d at 195-96, 199 (finding the existence of a contract between the plaintiff and a third party and the lack of existence of a contractual agreement between the plaintiff and defendant, among other factors, was insufficient to establish contacts necessary for personal jurisdiction in Virginia); *compare with CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293–94 (4th Cir. 2009*)* (finding specific personal jurisdiction where "the defendants met with the plaintiffs in Virginia to discuss the possibility of entering into a business relationship; the defendants retained the plaintiff; some

14

disputes between the parties were settled over the telephone, with the defendant in Oregon and the plaintiff in Virginia; the defendants travelled to Virginia at least once to meet with the plaintiff to discuss disputed fees; and the defendants sent correspondence and mailed payments to the plaintiff in Virginia"); *Eng. & Smith v. Metzger*, 901 F.2d 36, 39 (4th Cir. 1990) (finding specific personal jurisdiction where a defendant chose to associate with a Virginia law firm on a case and the firm performed all duties under the contract in Virginia, along with other factors).

Nor are the allegations that Stephens "derived substantial revenue" from the contract and maintained a registered agent in Virginia sufficient to confer personal jurisdiction with respect to Plaintiffs' claims.[8] *See Pub. Impact, LLC v. Bos. Consulting Grp., Inc.*, 117 F. Supp. 3d 732, 738 (M.D.N.C. 2015) ("the Fourth Circuit [has] held that registration to do business in a forum does not confer personal jurisdiction over an out-of-state corporation.") (collecting cases); *Ratliff v. Cooper Lab'ys, Inc.*, 444 F.2d 745, 748 (4th Cir. 1971) ("We think the application to do business and the appointment of an agent for service to fulfill a state law requirement is of no special weight in the present context. Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another."); *see also Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement,* 326 U.S. 310, 317, 66 S. Ct. 154, 159, 90 L. Ed. 95 (1945) ("generally recogniz[ing] that the casual presence of the corporate agent or even his conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to suit on causes of action unconnected with the activities there"); *King v. Am. Fam. Mut. Ins. Co.*, 632 F.3d 570, 572 (9th Cir. 2011) ("Nor is the appointment of an agent for service of process sufficient to confer either general or specific personal jurisdiction over the

---

[8] Plaintiffs also argue personal jurisdiction can be found based on the information Stephens used in its financial analysis that was derived in Virginia, [Doc. No. 4], but Plaintiffs do not provide any further detail that would allow personal jurisdiction to be found based on this conclusory assertion, particularly given that, as alleged, Giga, as opposed to Stephens, forwarded such information to out of state Plaintiffs.

15

company under our controlling standards . . . . Mere appointment of an agent for service of process cannot serve as a talismanic coupon to bypass this principle.").

Because this Court lacks personal jurisdiction over Stephens, its Motion to Dismiss with respect to Count 11 (fraud), Count 12 (constructive fraud), Count 15 (fraud), and Count 17 (negligence) is therefore **GRANTED.**

### D. Claims against Thompson

#### 1. Fraud (Count 13) and Constructive Fraud (Count 14)

Plaintiffs' fraud and constructive fraud claims against Thompson are based on the July 2015 Review Report that Thompson prepared on Giga's behalf.[9] Compl. at ¶¶ 21, 48 (general allegations), ¶¶ 163-173 (fraud), ¶¶ 174-183 (constructive fraud); *see also* Exhibit 21 (July 10, 2015 Report). But Plaintiffs fail to allege with the required specificity the elements of their fraud claims. Among other deficiencies, Plaintiffs fail to state in a non-conclusory manner what in the report is incorrect, when and in what manner each Plaintiff reviewed the July 2015 Report, and how the report influenced their decision to invest or loan money. *See generally* Compl. ¶¶ 163-173 (fraud), ¶¶ 174-183 (constructive fraud). Such omissions are all the more glaring when considering that many of the Plaintiffs' investments for which they seek damages occurred before the report was issued, making reliance on the report impossible as to those investments.[10] *See generally* Compl. at ¶¶ 36-44. Accordingly, Thompson's motion to dismiss with respect to Counts 13 and 14 is **GRANTED.**

#### 2. Negligence (Count 17)

While not specifically stated in the Complaint, it appears that Plaintiffs' negligence claim arises out of an alleged accountant-client relationship between Thompson and Giga and

---

[9] Plaintiffs routinely cite to the "Reports" that Thompson created but only cite to the one July 2015 Report.
[10] Plaintiff Valdes, for example, invested $648,800 through Series D and E preferred stock between January 2006 and December 2014, *id.* at ¶ 38, and Plaintiff O'Neill invested $25,000 in February 2006. Compl. at ¶ 39.

Thompson's alleged breach of a duty owed to Plaintiffs under that relationship.  *See Waterside Capital Corp. v. Hales, Bradford & Allen, LLP*, No. 2:05cv727, 2007 WL 2254661, at *6 (E.D. Va. Aug. 3, 2007), *aff'd*, 319 F. App'x 263 (4th Cir. 2009).  Professional malpractice is grounded in the tort concept of negligence or the failure of a professional to exercise the proper degree of care.  *Id.* at *5.  The following are the elements for a claim for professional malpractice against an accountant: "(1) an accountant-client relationship giving rise to a duty; (2) the accountant breached the duty; and (3) the breach of duty was a proximate cause of the claimed damages."  *Id.* at *6.

Plaintiffs fail to adequately allege any of these elements in a non-conclusory manner.  *See* Compl. ¶¶ 198-207.  Most basically, they fail to allege that they had an accountant-client relationship with Thompson; and the July 2015 Report makes clear that Giga was the client for which Thompson was providing services.  *See* Exhibit 21 (July 2015 Report); *see also* [Doc. No. 47-1] (engagement letter).  Plaintiffs claim that Thompson "negligent[ly]" provided "misleading Giga audited financial and evaluation reports" which the Plaintiffs relied upon but, as with their fraud and constructive fraud claims, they fail to point out which statements were false or misleading and when and in what manner Plaintiffs relied on such statements or the basis upon which any misstatements to Giga were actionable as to these Plaintiffs.[11]  Without such factual allegations, Plaintiffs' claim boils down to a barebones conclusory assertions that cannot survive Thompson's motion to dismiss.  Accordingly, Thompson's motion with respect to Count 17 is **GRANTED.**

---

[11] Plaintiffs cite *Rhode Island Hosp. Tr. Nat. Bank v. Swartz, Bresenoff, Yavner & Jacobs*, 455 F.2d 847, 851 (4th Cir. 1972) for the principle that "[a]ccountants owe a duty to their employer, and others whom they know or expect to rely on the report, to make the report in good faith without fraud or collusion and with care and caution of experts." (internal quotations and citation omitted).  But that case largely relied upon Rhode Island law and, in any event, Plaintiffs have not allege any facts beyond their conclusory allegations that Thompson made its report in bad faith or that Plaintiffs' relied on the information in the report.

### E. Hisaoka's Motion to Dismiss Counts 15 and 16.

*1. Fraud Claim (Count 15)*

As with the other Defendants named in Count 15, Plaintiffs fail to allege with

particularity the false representations Hisaoka made, when such statements were made, in what

context, and in what manner Plaintiffs relied on these representations. *See* Compl. ¶¶ 184-192;

*see also Fessler v. Int'l Bus. Machines Corp.,* 959 F.3d 146, 153 (4th Cir. 2020) (laying out the

requirements to make out a fraud claim under Rule 9(b)).  To the extent Plaintiffs tie their fraud

claim to the 2007 Amended Agreement or other contractual documents, such a claim is barred by

the economic loss rule.  For these reasons, Hisaoka's motion to dismiss with respect to Count 15

is **GRANTED.**

*2. Breach of Contract (Count 16)*

For a breach of contract claim to survive a 12(b)(6) motion, a complaint must allege (1) a

legally enforceable obligation under a contract, (2) a breach of that obligation, and (3) injury or

damage to the plaintiff flowing from that breach.  *Sanders v. UDR, Inc.*, No. 3:10-CV-459, 2010

WL 3927804, at *3 (E.D. Va. Oct. 4, 2010) (stating these elements under Virginia law).

As with Defendants Cardak and N. Bernardi, the 2007 Amended Agreement attached to

the Complaint as an Exhibit does not evidence that Hisaoka signed that agreement and Plaintiffs

have therefore failed to allege facts that make plausible their breach of contract claim.[12]

Moreover, the allegations of the Complaint do not provide enough detail to survive Hisaoka's

Motion to Dismiss Plaintiffs' breach of contract (Count 16).  While Plaintiffs provide further

information with regard to the Series E preferred stock Hisaoka allegedly sold compared to the

---

[12] Even though the 2007 Amended Agreement attached to the Complaint does not evidence Hisaoka's signature, Hisaoka has opposed this claim on the grounds that another agreement exempted his sales from the 2007 Amended Agreement. *See* [Doc. Nos. 36, 36(a)].  Plaintiffs contend that this other agreement is a fraudulent document and the Court has considered Plaintiffs' breach of contract claims against Hisaoka, as well as Cardak and D. Bernardi, solely on the basis of the allegations in the Complaint and the attached Exhibits. To the extent Plaintiffs can cure the deficiencies in their complaint, as identified by the Court, they may move to file an amended complaint.

other Defendants implicated in Count 16, *see* Compl. ¶ 57-58; *see also* Exhibits 25, 26, 27, 28, they do not allege facts that make plausible Hisaoka was subject to the 2007 Amended Agreement which their attached exhibit clarifies was not signed by Hisaoka. So for the above reasons, Hisaoka's Motion to Dismiss with respect to Count 16 is **GRANTED**.[13]

### IV. CONCLUSION

For the above reasons, it is hereby

**ORDERED** that the Motions to Dismiss filed by Defendants Cardak [Doc. No. 19], D. Bernardi, [Doc. No. 87], Stephens [Doc. No. 81], Thompson [Doc. No. 46], and Hisaoka, [Doc. No. 35] be, and the same hereby are, **GRANTED** and this action is **DISMISSED.**

The Clerk is directed to forward a copy of this Order to all counsel of record and to *pro se* Defendant Cardak.

_____
Anthony J. Trenga
United States District Court

Alexandria, Virginia
July 18, 2022

---

[13] Plaintiffs also vaguely reference a violation of the 1933 Securities Act. *See* Compl. at ¶ 57. To the extent Plaintiffs intended to assert such a claim, they have failed to allege facts that make such a claim plausible, as they have with respect to their common law fraud claims, and it is also dismissed. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").